Chad Belville IA Bar 015731
4742 North 24th Street Suite 315
Phoenix, AZ 85016
602-904-5485
FAX 602-297-6953
cbelville@azbar.org
Attorney for Plaintiff


# UNITED STATES DISTRICT COURT
# IN AND FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION


| | |
|---|---|
| FRASERSIDE IP LLC, | No. 11-cv-03034-MWB |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESISTANCE TO DEFENDANTS NETVERTISING, LTD, D/B/A HARDSEXTUBE.COM, RICHARD SZELES, AND LASLO RACZ' MOTION TO DISMISS** |
| Netvertising Ltd, d/b/a HardXXXTube.com, Richard Szeles and Laslo Racz, John Does 1 - 100, and John Doe Companies 1-100, | |
| Defendant(s). | *Oral Argument Requested* |


_____


COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad Belville, and RESISTS Defendants Netvertising Ltd, d/b/a HardXXXTube.com, Richard Szeles and Laslo Racz Motion to Dismiss in its entirety. In support of it Resistance to Motion, Plaintiff provides the attached Brief and Attachments. Oral argument is requested.

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................3

Statement of Facts.....................................................................................................6

    I.     Plaintiff Resists Defendants' Motion to Dismiss for Lack of Personal

           Jurisdiction ................................................................................................13

           A.     The Standard for Granting a Motion to Dismiss for Lack of

                    Personal Jurisdiction ..............................................................13

           B.     The Standard for Finding Personal Jurisdiction Over a Defendant ........16

           C.     Defendants' Internet Activities Establish Specific Personal

                    Jurisdiction .............................................................................17

    II.    The Court Should Exercise Jurisdiction Under Rule 4(k)(2), F.R.Civ.P.............30

    III.   The Court Should Permit Jurisdictional Discovery by Plaintiff .........................34

Conclusion .............................................................................................................37

Case 3:11-cv-03034-MWB-LTS   Document 23-1   Filed 04/30/12   Page 2 of 38

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) ..........................................................**16**

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)........................................ **20, 27,**

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)..............................**15**

**Cases**

*3M Co. v. Mohan*, 2010 WL 786519, 1-3 (D.Minn. 2010) ....................................................**25**

*Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004)………………..………30

*Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002)........................................................**18**

*Bose Corp. v. Neher*, 2010 WL 3814886 (D.Mass. 2010) ....................................................**25**

*Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989)..................................28

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).........................23

*Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007)...........................................**16**

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir.1997),

    rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ...................... **21,** 22

*CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011).... 19, 20, 21, 22,

    23, 26, 28

*Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) . 14, 26, 27, 28,

*David White Instruments, LLC v. TLZ, Inc.* 2003 WL 21148224 (N.D.Ill.2003) ..................................**26**

*Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 2199967 (E.D. Mo. 2011) .............**25**

*Fishel v. BASF Group*, 175 F.R.D. 525, 528 (S.D. Iowa 1997)…………………………………33

*Furminator, Inc. v. Wahba*, 2011 WL 3847390 (E.D. Mo. 2011......................................**24, 25, 26**

Case 3:11-cv-03034-MWB-LTS   Document 23-1   Filed 04/30/12   Page 3 of 38

*Getz v. Boeing*,  654 F.3d 852, 858 (9th Cir.2011) ....................................................................**29**

*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986).....................**28**

*Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) ..................................................**15**

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, F3d 485 F.3d 450, 461 (9th Cir.2007) .......................**30**

*lISI Int'l, Inc. v. Bordin Ladner Gerbais LLP*, 256 F.3d 548, 551-52 (7th Cir.2001) .............................**30**

*Jagex Ltd v. Impulse Software*, 750 F.Supp.2d 228,233 (D. Mass. 2010 ................................................**24**

*Johnson v. Arden*, 614 F.ed 785, 796 (8th Cir.2010.................................................................. **16, 32**

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003) ........................................**16,** 17, 28, 34, 35

*Majd-Pour v. Geordiana Community Hosp. Inc.*,  724 F.2d 901 (11th Cir.1984) ...................................**34**

*Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir.2005)...................................................................................**30**

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002).....................................**17**

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n. 22 (11th Cir.2009)..............................**30**

*Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011).......................................................**14**

*Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc.*, 426 F.Supp.2d 976, 982

(S.D. Iowa 2006) ...................................................................................................................... **33, 34**

*P.S. Products, Inc. v. Alibaba.com Inc.*, 2011 WL 861164 (E.D. Ark. 2011) .........................................**26**

*Radaszewski  v. Contrux, Inc.*, 891 F.2d 672, 674-75 (8th Cir.19899( (Radaszerski I) ..........................**34**

*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) ................................................................ **15, 16**

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind Com de Equip. Medico*, 563 F.3d 1285, 1297

(Fed.Cir.2009)...........................................................................................................................................**29**

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 12403, 1414 (Fed. Cir. 2009) ...........................**29, 30, 31**

*Viasystems, Inc. v. EBM-PAPST St. Georgen GmbH & Co.*, 2010 U.S. Dist. LEXIS 57871 (E.D. Miss.

2010). ........................................................................................................................................**26**

*Zen Design Group, Ltd. v. Clint*, 2009 WL 4050247, 3 (E.D. Mich. 2009)..............................................**25**

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) ...................**16, 17, 18**

4

**Rules**

**Iowa R. Civ. P. 1.306**......................................................................................................................**15**

**Federal Rules of Civil Procedure 4 (k)(2)**...........................................................................**30, 31, 34**

**Federal Rules of Civil Procedure 8(d)(2))**.......................................................................................**31**

**Federal Rules of Civil Procedure 12 (b) (6))**.................................................................................**15**

**Other Authorities**

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03 .................................................... 28

Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as*

    *conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41

    (2000)......................................................................................................................................................... 16

Case 3:11-cv-03034-MWB-LTS   Document 23-1   Filed 04/30/12   Page 5 of 38

This case is nearly identical to 11-cv-03033. Plaintiff has approached Defendants with a request to consolidate, which has not been responded to at the time of this submission.

This case belongs in Iowa. The website HardXXXTube.com is displaying copyrighted videos owned by Plaintiff, a legitimate Iowa company. Defendant Netvertising, Ltd. is an alien entity, purporting to operate outside the United States and outside the jurisdiction of any United States Court but simultaneously utilizing United States domain registration services, billing solutions, hosting services, displaying ads for United States services, targeting consumers in Iowa and the rest of the United States, paying premiums for United States internet traffic, and allegedly utilizing United States and possibly Iowa based affiliate sales persons. Plaintiff accessed the Defendant's website from its offices in Northwood, Iowa and documented infringements at that location. The copyright and trademark infringement is harmful to Plaintiff, that harm is being done in Iowa and aimed at an Iowa company. If this Court does not have jurisdiction over Defendant, what court does? The Internet has created a new reality and new fact patterns that do not fit neatly into prior decisions, so these cases in the Northern District of Iowa have the potential for groundbreaking precedent. Can entities operate outside the United States and sell advertising and memberships to U.S. residents with a business model built upon infringing U. S. copyright and trademark holders – all with complete impunity because United States courts lack jurisdiction? Has the Internet created a loophole in our system of laws so large that multi-million dollar piracy operations can take place over U.S. communication systems, taking U.S. dollars from unknowing U.S. consumers and the modern day pirates thumb their noses at all attempts for redress, even from the United States District Courts?

The Plaintiff says No. Given the facts, the Rules, and evolving case law, the Defendants are properly before this Court.

**Facts**

**The Parties**

**Fraserside IP, LLC**

Plaintiff Fraserside IP LLC is the rightful owner of copyrights and trademarks in high quality brand driven adult motion picture films. Contrary to Defendants' unsupported allegations that Plaintiff was created merely to forum shop (forum shopping Iowa??), Plaintiff, as successor in interest to sister and parent organizations, is engaged in the business of producing, distributing, and/or licensing to others the rights to copy, distribute, transmit and exhibit those copyrighted films and/or other audio visual works. Complaint, ¶ 5, p. 5. Plaintiff is a legitimate Iowa Limited Liability Company. Further, Plaintiff is a member of the Northwood, Iowa Chamber of Commerce and has committed to sponsorship of the Chamber's 4th of July celebration. Fraserside is also rebuilding the Northwood Chamber of Commerce website. There are people working at Fraserside's Northwood offices, every day, in full-time positions researching copyright infringement. All were previously unemployed. Plaintiff is no mere shell company, but instead is a growing company based in Iowa and providing jobs to Iowa residents. (Declaration of Jason Tucker)

Plaintiff is also the holder of certain Trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels and the Private Life Of that have been actively promoted and marketed. As a result, the purchasing public has come to know, rely upon and recognize these marks as an international brand of high quality entertainment. Complaint, ¶ 5-15. Plaintiff does business, either directly or through affiliates or licensees, by distributing its copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, DVD's, and other formats, by selling them directly or indirectly to the home viewing

market or licensing others to do so and through Internet streaming and download services. Complaint, ¶ 5, p. 5.

Despite Defendants' unsupported assertions that Fraserside is an entity with only a mail drop box created to establish jurisdiction in Iowa, Plaintiff is a legitimate Iowa business that also engages in business with Iowa residents. In 2010, for instance, it or its sister or parent companies shipped over 400 orders to Iowa residents and delivered nearly 2,000 orders online to Iowa customers. Complaint ¶ 5, p. 4.

### Fraserside Holdings and Private Media

Defendants find it necessary to discuss non-parties to the lawsuit in an effort to muddy the waters. The fact that Private Media is a Nevada company and the parent of Fraserside Holdings as well as Fraserside IP LLC is also irrelevant. The lineage of an Iowa entity does not somehow nullify its ability to protect its rights in Iowa courts, and after an attorney from Defense Counsel's office made an unannounced visit to Fraserside IP's offices in Northwood, and met Plaintiff's counsel there, it is baffling why they would still claim this Iowa Company is a front.

### Defendants

While Defendants assert that they have never been to Iowa or the U.S., don't have telephone numbers, employees, offices or servers in either place, this statement says nothing to the issue of whether they are doing business with Iowa and other United States residents and appears to be misleading or even intentionally untrue.

Defendant website HardXXXTube is part of a network of websites that are arguably one of the most visited websites in the world, reaching thousands of users.

At HardXXXTube's sister site HardSexTube, where more information is publicly available and comparable to HardXXXTube, a full 16.7% of the websites' visitors are located in

the United States, meaning that these enormous numbers of visitors result in Plaintiff's copyrighted works being viewed tens or even hundreds of thousands of times on Defendant's websites. Users come from all over the United States, including Iowa. HardXXXTube is under common ownership with HardSexTube, is part of a common scheme or plan, and feeds surfers to HardSexTube. A Google search for HardSex community results in countless pages of United States users (Exhibit A Google HardSex Community Search Results). Plaintiff claimed in the Complaint that "the number of Iowa-based views per month will be determined during discovery" Complaint, # 22. The number of Iowa users can only be determined through discovery. However, a representative sample of Iowa users can easily be found (Exhibit B Iowa Based User Profiles Sample). While a search of Defendant's website turns up this information, only through discovery can the true extent of the contacts be determined. Plaintiff can show that there are Iowa users, but Plaintiff needs jurisdictional discovery to determine the extent of Defendants' contacts with Iowa and the United States. Defendant would have this Court dismiss the case in its entirety prior to any proceedings because it fears jurisdictional discovery will show the extent of its contacts.

As the Complaint alleges, Defendant HardXXXTube is truly a subscription membership web site hiding behind the veneer of a user-generated content exchange site. Defendant uses HardXXXTube and free content to entice surfers to buy premium memberships at its affiliated white label website. Complaint ¶ 29 Affidavits of Defendants. The premium membership is sold in U.S. Dollars and directly financially benefits Defendants. Complaint ¶ 29, 11-cv-03033 Complaint ¶ 37. In addition, Defendants solicit internet salespeople to send surfers, or "traffic" the Defendant website. Defendants pay third parties to send web users to Defendants' website pay third parties to send traffic to the website, just like a membership website. Defendant

9

currently has disabled public information regarding its webmaster program, but Defendant states at its sister site that it currently pays third parties up to $1.30 in U.S. Dollars for every one thousand (1,000) unique visitors sent to Defendant's website. The United States is a "Good Country" arguably because users from the United States will buy memberships and/or products advertised on the website. United States users make the website more valuable, thus Defendants pay affiliates a premium for United States internet traffic. The affiliates the Defendant pays to send internet traffic would also constitute contacts within the forum jurisdiction, which identities of affiliates can only be determined through discovery. Defendants makes the claim that it does not advertise in the US and does not direct its websites at the US, but it will pay webmasters a premium to send users from the US and pay those webmasters in US dollars. (Exhibits 1 and 2, Affidavits of Defendants, Exhibit C Webmaster Pages). This is the definition of directing its websites at the United States!

Despite this, Defendants assert by Affidavit that "Netvertising does not itself enter into commercial transactions with users located in Iowa, the United States, or anywhere else in the world." Instead Defendants assert that the premium membership offered on the website takes users to a "white label" site operated by a third party, named "hardsextube.getiton.com" with logos, look and feel like HardSexTube. (Exhibits 1 and 2 of Defendants' Motion to Dismiss). Netvertising claims it does not own or control the white label site (HardSexTube.getiton.com), but has an agreement with a third-party content provider that hosts and runs the "premium membership" site. (Defendant Affidavits) The third-party handles the billing and pays Netvertising a referral fee when individuals sign up for an account. By its own admission, Netvertising realizes a direct financial benefit when a surfer buys a premium membership, and just because "most adult "tube" site operate" like this does not absolve Defendants from liability.

Simply, Defendants use a middle man entity to directly and financially benefit from sales of memberships to U.S. and Iowa internet surfers.

When one visits the website, an ordinary surfer would not believe HardXXXTube has no control over the premium site. Clicking on the partner advertising link at HardXXXTube lands a user at a HardSexTube.com premium site, HardSexTube.getiton.com, which acknowledges it is a FriendFinderNetwork website. FriendFinder is part of Penthouse, a Untied States publicly traded company. Penthouse has ample ties to the United States, and redirecting users to a white label site is a shell game, not a legitimate defense. (Exhibit F, AdultFriendFinder dba GetItOn FAQ, Declaration of Jason Tucker).

Further, Defendant affidavits claiming no ownership are not supported with any third party documentation. There is no certified copy of filed corporation documents that show ownership or lack thereof. There is no documentation, other than the assertions of individuals located in Hungary, supporting their assertions. Evidence discovered through publicly available sources all points back to the named Defendants as the owners. (Declaration of Jason Tucker) These are the types of facts that can only be determined through jurisdictional discovery.

When a HardXXXTube user wishes to join, that user is taken through a series of join forms. As the Defendants admit, once the user joins the premium offering, Defendants receive a referral fee. The commercial transactions may not be directly between users and Defendant, but commercial transactions take place and Defendant directly benefits. The casual user sees the premium site having the same color scheme, layout, logos, look and feel as HardXXXTube. (Exhibit E Join Sequence) The two sites, for all intents and purposes, appear to be under common control. Without any solid evidence supporting their statements, Defendant's assertions appear to be false.

However, even if the premium membership sign up did send a person to a completely separate website, this would not relieve Defendants of liability or deprive the court of jurisdiction. An owner has complete control over what is shown on its website, and Defendants admit direct financial gain in the form of a referral fee whenever a surfer joins a white label site. Defendants do not define what a "white label" is, but it is a site that is set up by the originating website owners. (Declaration of Jason Tucker). Thus, it is clear that Defendants set up the premium membership and as Defendants admit they are sending surfers to join the premium website in return for a referral fee. Defendants, by their own admission, are still receiving a direct financial benefit from Iowa and other United States users' fees. (Defendants' Exhibits 1 and 2, Affidavits of Richard Szeles and Laslo Racz, Affidavit of Jason Tucker).

Plaintiff's investigation also shows Defendants' other contacts with the United States, contrary to their assertion of no contacts in the U.S. The websites use a U.S. based (California) based registrar for privacy protection services, so it appeared that the domains were registered to a California company. (Exhibit D, WhoIs HardXXXTube.com). Domain registration through a United States registrar does put the website at minimum under California jurisdiction. The premium white label site is generated by a United States entity which is publicly traded. (Affidavit of Jason Tucker). Payment is made from a United States company directly to Defendants as a referral fee, directly financially benefiting Defendants. (Exhibits E and F, Affidavit of Jason Tucker, Affidavits of Defendants).

The infringement of Plaintiffs' copyrights appears rampant on Defendants' website. (Affidavit of Jason Tucker). Customers or potential customers of Plaintiff are lost when Defendant gives away Plaintiff's goods without benefit to Plaintiff. Defendants have actual knowledge and clear notice of this extensive infringement of Plaintiff's titles as Plaintiff's works

are clearly marked. The infringement is clear and obvious even to the most naïve observer. Complaint ¶ 40, 41.

Because of Defendants' knowledge of the high value of Plaintiff's trademarks and copyrighted videos, Defendants' infringement of Fraserside's copyrights and trademarks is aimed at Plaintiff, who is located in Iowa. For the same reason, the infringement is aimed at harming Plaintiff in its business, and Defendants knew and know that Plaintiff was an American company located in Iowa and was aware that Defendants' infringing activities would cause Plaintiff to lose profits. Even if Defendant did not know the Plaintiff was an Iowa company, Defendants knew that it was infringing on *somebody's* content. Complaint ¶ 41.

Lastly, Defendants' websites contain geographically targeted advertising. When a person in Iowa navigates about on the website, that Iowa resident is served with ads specific to his/her location. Recently, a Fraserside employee logged onto the site in Iowa, and navigated to a video page hardxxxtube.com/video/867096. The Fraserside office is located in Northwood, Iowa. Clicking on the banner at the bottom of the video, the user was presented with advertising stating "7 girls online in Horseshoe are looking for sex tonight" and "Find sex partners in Newton" (Exhibit H Targeted Advertising). Clearly, Defendants are targeting and engaging Iowa residents with its website, using Plaintiff's copyrighted videos.

Discovery is necessary to demonstrate the full quantum of contacts Defendants have with Iowa, but Defendants' website has targeted Iowa residents with its commercial advertising.

I.   **Plaintiff Resists Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

   A.  **The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction**

Plaintiff bears the ultimate burden of proof on the issue of personal jurisdiction over the Defendants. However, "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiff here need only make a prima facie showing of jurisdiction. *Id.* "If the district court does not hold a hearing and instead relies on pleadings and affidavits, as it did here, the court must look at the facts in the light most favorable to the nonmoving party,… and resolve all factual conflicts in favor of that party." *Id.*; *See also, Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011).

In an effort to defeat personal jurisdiction, Defendants have submitted an unsupported affidavit that refutes facts set forth in the complaint and includes information about how HardXXXTube's premium membership works. Plaintiff has contested those facts with screen shots of the Defendants' website showing that premium membership does exist through HardXXXTube.com, and that discovery is needed to disclose the full extent and nature of the relationship among websites as well as ownership and control. This dispute of facts should require conversion of the Motion to Dismiss to a Motion for Summary Judgment. Where the court relies on pleadings and affidavits to determine whether Plaintiff has made a showing of personal jurisdiction over the Defendants, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

Further, Defendants contend, in its statement of undisputed facts, that Plaintiff Fraserside IP LLC is a separate legal entity from Fraserside Holdings Ltd. and Private Media Group Inc. In its Memorandum, Defendants in one paragraph state "the following facts …are accepted as true

for the purposes of this motion:…" but then states, "Fraserside IP appears to be created for the sole purpose of judicial forum shopping." While ludicrous, this is disputed wholeheartedly by Plaintiff. Defendant goes on to state, "Although the Complaint pretends that Fraserside IP is the same as Fraserside Holdings and Private Media, in truth, each of these companies is a separate legal entity." (Doc. 17, Memorandum in Support of Defendant Motion to Dismiss) Defendant first claims the following statements are undisputed and then refutes itself in its own writing. Defendant tries to do an end run around denying the material fact that Fraserside IP LLC owns the copyrights and trademarks it claims in its entirety, consistent with prior arguments by defense counsel that the copyrights and trademarks were not shown on the official government website as registered to Plaintiff at the time of the infringement. This is a challenge to Plaintiff's ownership of the copyrights and trademarks, and to its standing to bring the action, and is thus brought under Rule 12(b)(6). Thus, the Court should convert this motion to one for summary judgment and permit discovery before the response is due.

### B. The Standard for Finding Personal Jurisdiction Over a Defendant

As Defendants note, Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. See Iowa R. Civ. P. 1.306. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam). Therefore, this Court only needs to examine whether the exercise of personal jurisdiction over Defendants comports with due process. *Hicklin*, 959 F.2d at 739.

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). General jurisdiction arises when a defendant has carried on in the forum state a continuous and

15

systematic, even if limited, part of its general business, and if so, the injury sued upon need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586.

"Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.*; *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

### C. Defendants' Internet Activities Establish Specific Personal Jurisdiction

"The continuous and illimitable presence of the internet has required fashioning special rules for applying the traditional due process test." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007). The "traditional territorial notions of personal jurisdiction, …have required re–examination in recent years in light of technological advances and the increasing globalization of the economy. Commercial uses of the Internet, in particular, have tested the limits of a territorial–based concept of jurisdiction." Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000).

"When considering the sufficiency of internet contacts under a **specific** jurisdiction analysis, [the Eighth Circuit has] found the *Zippo* test instructive." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010), citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003). Lakin, 348 F.3d at 710–11. In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, the court examined the issue of whether a website could provide sufficient contacts for specific personal jurisdiction. 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), the court devised a "sliding scale" approach to determine the nature and quality of the Internet activity. At

16

one end of the spectrum, a defendant clearly does business over the Internet. Thus, "[i]<u>f the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper</u>." *Zippo*, 952 F.Supp. at 1124. At the other end is the website that is passive, only making information available to the public, and providing no grounds for personal jurisdiction. In the middle are cases of interactive websites allowing users to exchange information with the host computer. *Id*.

In *Lakin,* the Eighth Circuit "agree[d] with our sister circuits that the Zippo model is an appropriate approach in cases of specific jurisdiction-i.e., ones in which we need only find 'minimum contacts.'" *Lakin*, 348 F.3d at 711. As *Zippo* teaches, defendants using websites to enter into contracts with residents and engage in knowing and repeated transmission of Internet files can constitute the purposeful availment of the privilege of acting in a forum state.

In *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002), the Sixth Circuit addressed a trademark infringement case. The defendant company accepted blood for testing and accepted payment from residents in Michigan, giving them passwords to access the results over the Internet. The court found that establishment of a paid area accessible only to members is characteristic of a website with a high degree of interactivity. *See Neogen*, 282 F.3d at 890-91. The Court held that Neogen had presented a prima facie case that NGS transacted business in Michigan by showing the interactive nature of the website. "The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." Thus, the court found it appropriate to exercise specific jurisdiction over the defendant, NGS. *Id*.

Likewise, in *Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002), the Sixth Circuit court held that the defendants, by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, satisfied the purposeful-availment requirement and were subject to specific jurisdiction. There, the fact that the defendant regularly chose to do business with Ohio residents was sufficient. *Id*.

Upon review of all cases cited by both Plaintiff and Defendant, it appears that the majority of prior cases that examine jurisdiction involve defendants located in other Circuits, not alien defendants located outside the United States. In those cases, Plaintiffs had the option of filing suit in Defendant's District, unlike the instant matter involving alien defendants not located in any District and claiming to be immune from the reach of any District.

Here, Defendants' website is not a mere passive website such as those at the bottom of the Zippo sliding scale. The HardXXXTube website does much "more than make information available to those who are interested in it." *Zippo Mfg*., 952 F.Supp. at 1124. The website falls on that end of the spectrum "where a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," and thus, specific personal jurisdiction is proper. *Id*.

HardXXXTube and HardSexTube are part of a common scheme or plan; HardSexTube has created an interactive internet community on its webpages where users from Iowa have joined the website. A sample of Iowa user profiles from the HardSexTube website are attached, showing that indeed Iowans are logging in and interacting with the HardSexTube website, and have been doing so for years as the days since joining are listed in the member's profile. The sample profiles are of persons unknown to Plaintiff and gleaned from a simple search of

18

Defendant's website. (Exhibit B, Sample of Iowa user profiles, Affidavit of Jason Tucker). As these were easily found, it is highly likely greater numbers of Iowan users are members of Defendants' websites. The extent of Iowa users can only be determined through further discovery.

HardXXXTube directs users to a premium page, HardSexTube.getiton.com. The site provides for premium membership paid for in U.S. Dollars, with the billing recurring automatically on the subscriber's credit card. Members have access to videos not available to the general public. Members of HardXXXTube have 24 hour access to content on the respective websites. HardSexTube.getiton also provides for ongoing interaction with the host computer by permitting interaction with other members through its community webpages and user profiles.

Another case that demonstrates this Court has jurisdiction over Defendants is *CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011). This case is particularly useful because the Defendant is an alien, located outside the United States. There, the Court used the purposeful availment test handed down by the U.S. Supreme Court. The Plaintiff, a developer of Internet parental control software, alleged that Chinese companies had targeted Plaintiff by obtaining its code for the software and distributing Plaintiff's copyrighted work without authorization. As to jurisdiction, Plaintiff alleged that the companies knew that Plaintiff was a U.S. company and that the defendants' acts would cause injury in the U.S. and in California, the forum state. Plaintiff also claimed that the defendants made the infringing software program available for download to individuals in the United States and had made Plaintiff's code for the software publicly available on its servers. The Plaintiff alleged that a third defendant, who engaged in other activity in California, distributed computers with Plaintiff's software code in China.

19

The California court used a three-part test taken from U.S. Supreme Court authority to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant. First, the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *CYBERsitter*, 2011 WL 3322552, 6.[1]

The Ninth Circuit evaluated the first test, whether there has been purposeful availment of the privilege of doing business in the forum, using the "Calder-effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *Id*. The test requires that defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*.

The California district court found that the intentional act requirement was easily met as to all defendants. Courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *CYBERsitter*, at 6. Any one of the alleged acts of

---

[1] The U.S. Supreme Court has said that the due process requirement that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 1984). *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). Under such circumstances, the Court held, it is reasonable to exercise jurisdiction over a defendant. *Id*.

Case 3:11-cv-03034-MWB-LTS   Document 23-1   Filed 04/30/12   Page 20 of 38

theft, misappropriation, and subsequent distribution of Plaintiff's code were all actual, physical acts, even if done by computer.

Here, too, Plaintiff's allegations show that Defendants have knowingly offered Plaintiff's videos that are protected by United States copyright on Defendants' website, and made them available for download throughout the United States. Defendant clearly targets U.S. users. The website is in English. Defendant offers premium payment for affiliates to send internet traffic from the United States. Advertising is targeted to Iowa and United States residents. Its premium membership is offered in dollars. Payments are processed through United States payment processors and tracked using United States tracking services. The domains are registered through a U.S. registrar. A significant percentage of its visitors are U.S. residents.

Next, the CYBERsitter court looked at whether the activities of the defendants were expressly aimed at the forum state. The requirement of express aiming requires more than "'untargeted negligence' that merely happens to cause Plaintiff harm." CYBERsitter at 8. The court cited the Ninth Circuit's previous decision in *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc*., 106 F.3d 284 (9th Cir.1997), rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), and noted that "an allegation of a defendant's willful copyright infringement against a plaintiff with knowledge of plaintiff's principal place of business satisfies the Calder effects test." CYBERsitter, citing *Columbia Pictures* at 289.

In CYBERsitter, the defendants argued that it never distributed or marketed the allegedly infringing items in California, and that express aiming could not be found from the mere fact that defendants did nothing above and beyond willfully infringing Plaintiff's copyright with the knowledge that Plaintiff resided in California. California, home to such well-known entities as Walt Disney, Microsoft, Oracle, much of the music and movie industry, tends to lead the nation

in development of trademark and copyright law. The California court disagreed with the CYBERSitter defendants, pointing to the Ninth Circuit's decision in Columbia Pictures that an allegation of willful copyright infringement knowingly directed at a forum resident "alone" is sufficient to satisfy purposeful availment. CYBERsitter at 10, citing Columbia Pictures, 106 F.3d at 289.[2] "When Defendants commit intentional copyright infringement with knowledge of plaintiff's residency, … they 'should reasonably anticipate being haled into court' in the forum in which Plaintiff resides, as the brunt of the injury takes place there." Id.

Here, too, the infringement of Plaintiff's videos was expressly aimed at harming Plaintiff in its business. Defendants knew that Plaintiff resided in Iowa, and that Plaintiff sells to Iowa residents the very videos Defendants are infringing by giving away for free. The quality of Plaintiff's videos and the trademarked and copyrighted names and symbols are further evidence that Defendants specifically intended to target Plaintiff, and the goodwill of Plaintiff's marks, when they placed Plaintiff's videos on their website. This infringement hurts Plaintiff both as a resident of Iowa and as a company selling to customers in Iowa, who may discontinue buying from Plaintiff and become members of Defendants' website instead.

Defendants have created an interwoven series of websites under separate shells, conspiring to and distributing and making Plaintiff's videos available to residents in the United States and Iowa, knowing that Plaintiff resides in Iowa. Defendants' websites target United States residents in general and Iowa residents in particular. This is express aiming, and this court should so find.

---

[2] In Columbia Pictures, the Ninth Circuit relied on Calder for this holding, noting that Calder held that an intentional tort knowingly directed at a forum resident satisfies the minimum contacts test.

The last element in the Ninth Circuit's purposeful availment test is the harm likely to be suffered in the forum state. To satisfy this element, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm." *CYBERsitter*, at 10. Further, Plaintiff satisfies this element if it alleges that defendant's intentional act has 'foreseeable effects' in the forum. *Id*. The *CYBERsitter* court quoted *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010): "In this case, it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside." *Id*. The court held that plaintiff had met the third and last prong of the test, as it alleged that the misappropriation of Plaintiff's copyrighted material would cause harm to Plaintiff in California, and that all of the defendants knew Plaintiff was an American company and that their actions would cause injury to Plaintiff in California. The court thus denied the Motion to Dismiss.

This Court should do the same. It was imminently foreseeable to Defendants that Plaintiff would be injured by the unrecompensed offering of Plaintiff's videos on Defendants' website. Defendant knew that Plaintiff would lose profits by its acts, that Plaintiff was an American business and that it was located in Iowa. Thus, this Court should also find that Plaintiff has made a prima facie case showing that it has specific personal jurisdiction over the Defendant.

Other courts outside of the Ninth Circuit have similarly found that purposeful availment arises from offering products by Internet. In *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 233 (D. Mass. 2010) found that an interactive website that permitted Massachusetts users to exchange payment information for software codes ("Bots") to use in a game was sufficient to exercise jurisdiction. Even though "defendants do not specifically seek out Massachusetts

customers, they do not bar them or discourage them from purchasing Bots." The court also found it significant that defendants' websites were not "passive" in nature and that Massachusetts residents use the websites to sign electronic agreements with the defendants and to purchase and use their products. Accordingly, the Court found that defendants had purposefully availed themselves of the privileges of conducting business in Massachusetts.

One district court in the Eighth Circuit has likewise found jurisdiction in the state where Plaintiff resides when infringing products are available on the Internet. In *Furminator, Inc. v. Wahba*, 2011 WL 3847390 (E.D. Mo. 2011), the court noted that even in the Eighth Circuit, when the cause of action involves a tortious act, a plaintiff may obtain specific jurisdiction over a nonresident defendant using the *Calder* effects test. As the court noted "[i]n applying the effects test, the economic injury in trademark infringement cases occurs in the state where the trademark owner has its principal place of business." *Id*. The court did not find that general jurisdiction existed, but that it could exercise specific jurisdiction. The Plaintiff, FURminator, made a prima facie showing that Wahba and Koch knew that the products in question that they sold on eBay.com or Amazon.com were available to Missouri residents, were in fact sold to at least one Missouri resident (Plaintiff), and more-importantly, were counterfeit, infringing on a Missouri company's trademark. *Express Scripts, Inc. v. Care Continuum Alliance, Inc*., No. 410CV2235 CDP, Further, the *Furminator* court *addresses Express Scripts, Inc. v. Care Continuum Alliance, Inc*., 2011 WL 2199967 (E.D. Mo. 2011), the case Defendants highlight in footnote 11 as "particularly on point." The court noted that the dismissal in *Express Scripts* for lack of personal jurisdiction was based on the fact that the Plaintiff owner of the trademark was not a resident of Missouri and thus, there was no evidence that the alleged infringement would be felt in Missouri. As the *Furminator* court noted "Here, to the contrary, it is undisputed that the Missouri plaintiff

is the owner of the trademark." *Furminator, Inc. v. Wahba*, 2011 WL 3847390, 5 (E.D. Mo. 2011). And here, too, the Iowa Plaintiff is the owner of the trademarks and copyrights and the effects of the infringement are thus felt here.

The cases cited by the *Furminator* court in Missouri seem to show a more modern trend toward asserting jurisdiction where the infringement affects a resident of the state. The Court cited *3M Co. v. Mohan*, 2010 WL 786519, 1–3 (D.Minn. 2010) as holding that the court had specific personal jurisdiction over a nonresident defendant that used eBay.com and Amazon.com to sell products which allegedly infringed trademarks and patent held by the resident plaintiff; *Bose Corp. v. Neher*, 2010 WL 3814886 (D.Mass. 2010) as holding that the court had specific personal jurisdiction in an infringement case over defendants who allegedly violated a forum company's trademark by posting infringing products on eBay.com, <u>even absent proof of specific sales to forum residents</u>; and *Zen Design Group, Ltd. v. Clint*, 2009 WL 4050247, 3 (E.D.Mich. 2009) where the court ruled that the accused patent infringer's offering of a product for sale on an eBay internet auction to residents of the forum created personal jurisdiction for the infringement claim.

The *Furminator* court also cited the Eighth Circuit Court of Appeals' decision in *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) to support its findings. The case, though not involving Internet activity, demonstrates that the Eighth Circuit would likely follow the reasoning in *CYBERsitter* and find specific personal jurisdiction in this case.

The cases Defendants cite are easily distinguishable. In *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 2010 WL 2402834 (E.D. Mo. 2010) aff'd sub nom, 646 F.3d 589 (8th Cir. 2011), the court addressed whether the defendant was subject to the general jurisdiction

Case 3:11-cv-03034-MWB-LTS   Document 23-1   Filed 04/30/12   Page 25 of 38

of Missouri courts based on its website, the network of distributors of its products in Missouri, and the activities of EPI, its North American affiliate, which was registered to do business in Missouri and does conduct business in the state. Here, Plaintiff asserts that the Court has **specific** personal jurisdiction over Defendants based on their own activities, not the activities of others.

In *P.S. Products, Inc. v. Alibaba.com Inc.*, 2011 WL 861164 (E.D. Ark. 2011), the court actually took evidence at a hearing, thus distinguishing the circumstances of making the decision. Further, the court noted that the website in question "provides information to users but does not sell the product listed." Likewise, in *David White Instruments, LLC v. TLZ, Inc.*, 2003 WL 21148224 (N.D.Ill.2003), the court also found that visitors of the website could not purchase products from the website, but had to go to an unrelated website to make the purchase.

Here, the evidence Plaintiff has provided, coming directly from Defendants' website, shows that it does target Iowa residents, that it does sell and/or directly benefit financially from the premium membership and that Iowans are members of its websites. The Court must resolve the factual dispute in favor of Plaintiff if the Court acts without conducting a hearing. Thus, the facts are that Defendants do sell memberships on their website and that Iowans are members of their interactive websites.

Defendants fail to cite *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*. There, the Plaintiff, Dakota Industries, a company located in South Dakota, claimed trademark infringement by Dakota Sportswear. Sportswear had no offices, outlets, agents or employees in the forum state (South Dakota), and had never marketed or advertised in South Dakota, and never directly or indirectly shipped products into South Dakota. The evidence showed, however, that the end purchasers of Sportswear's clothing were located throughout the entire United States. Further,

26

major chains carried Sportswear clothing, and thus, if the chains to which Sportswear sold had outlets in the forum state (South Dakota), Sportswear's clothes <u>could</u> be shipped there.

The Court cited *Calder* for the proposition that the defendant's lack of control over distribution of the product in the forum state would not bar jurisdiction when the plaintiff has alleged an intentional tort. *Id*., citing *Calder* at 789-90, 104 S.Ct. at 1487. The evidence showed that there was some "passing off" (where the deceived customer buys the defendant's product believing it is the plaintiff's) of Sportswear's infringing clothing in South Dakota. This fact, along with the fact that Industries' principal place of business was in South Dakota, demonstrated that "Sportswear's actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there, as required by *Calder*. The court noted that in the Calder case the allegedly wrongful act of running a defamatory article on a movie star was more directly aimed at the plaintiff and her work in the forum state than in Dakota Sportswear. It noted that the defendant the National Enquirer had its biggest circulation in California and thus a stronger sales presence in the forum state than Dakota Sportswear did. However, the court found that the distinctions did not prevent the applicability of Calder to the facts of the case. *Dakota Indus., Inc*., 946 F.2d at 1391. The court found that under the circumstances enumerated there, Sportswear 'must reasonably anticipate being haled into court' in South Dakota." *Id.*  The Court therefore held that Plaintiff had made a prima facie showing of personal jurisdiction, reversed the dismissal and remanded for further proceedings.

In *Dakota*, the Eighth Circuit also made special note of two Ninth Circuit Court of Appeals cases that held that jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state: *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989); *Haisten v. Grass Valley*

*Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). It is safe to presume that the court would have followed the analysis in *CYBERsitter* and came to the same conclusion: that exercising personal jurisdiction is proper.

The facts of this case are comparable to those in *Dakota*. Here, as in the Internet cases, Defendant maintains interactive websites where Iowans join and where users in Iowa pay a fee for Defendant to distribute Plaintiff's videos to them, causing injury to Plaintiff, an Iowa corporation. Further, Defendant is ready to accept the business of Iowa residents, enticing Iowa residents with the opportunity to become paying members with the expectation of viewing upgraded videos and download premium versions of Plaintiff's films. Plaintiff has Iowa residents for customers and Defendants are competing for these same Iowa customers with their website. By these activities and the obvious targeting of Iowa residents, Defendant has purposefully directed its activities at Iowa residents (including Plaintiff) and purposefully availed itself of the privilege of doing business in Iowa as required for specific jurisdiction.

For the court to exercise specific jurisdiction, it must also find that the plaintiff's action arises out of or relates to the defendant's forum-related activities. *Lakin, supra*. Here, the activities of defendant – allowing Iowa residents to view the Plaintiff's pirated videos – is exactly what Plaintiff sues for in this action. Consequently, the elements of specific personal jurisdiction are met in this case, and the Court may exercise jurisdiction over Defendant. The court should therefore deny the Motion to Dismiss.

## II.     The Court Should Exercise Jurisdiction Under Rule 4(k)(2), F.R.Civ.P.

An alternative giving this court jurisdiction exists in a case such as this, where Defendants have asserted that jurisdiction is only proper in another country. Rule 4(k)(2), F.R.Civ.P. closes the loophole in personal jurisdiction that formerly allowed a non-resident

28

defendant with insufficient "minimum contacts" in any individual state but sufficient contacts with the United States as a whole, to escape jurisdiction in all fifty states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).

Rule 4(k)(2), commonly known as the federal long-arm statute, states that as to claims arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." The Rule, in essence, applies to "foreign defendants lacking sufficient contacts with any single state [who] could ... avoid responsibility for civil violations of our federal laws." *Getz v. Boeing*, 654 F.3d 852, 858 (9th Cir.2011). It was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed.Cir.2009), citing Fed.R.Civ.P. 4(k)(2) advisory committee notes to 1993 amendment.

As to the first requirement, that the case is brought under federal law, Plaintiff's claims under the Lanham act and trademark and copyright infringement statutes are clearly federal law claims. As to the second requirement, that defendant is not subject to jurisdiction in any single state, the D.C., Federal, Fifth, Seventh, Ninth and Eleventh Circuits have adopted an approach that places the burden of proof of this element on the defendant. *See Oldfield v. Pueblo De Bahia Lora*, S.A., 558 F.3d 1210, 1219 n. 22 (11th Cir.2009); *Touchcom, Inc. v. Bereskin & Par*r, 574 F.3d 1403, 1415 (Fed. Cir. 2009); *Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551-52 (7th Cir.2001); *Holland Am. Line Inc. v. Wartsila N.*

29

*Am., Inc.*, 485 F.3d 450, 461 (9th Cir.2007). Defendants would have the Court place the burden of proof on Plaintiff.

Placing the burden on Defendant is the better approach as the cases above demonstrate. A court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed. As the Seventh Circuit noted, "A *defendant* who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to consent to personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l*, 256 F.3d at 552 (citations omitted)( *emphasis added*).

As the Federal Circuit noted in *Touchcom* the purposes of Rule 4(k)(2) – to prevent defendants with nationwide minimum contacts from avoiding jurisdiction here – are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit. The courts should not require a plaintiff to aver that there is no state in which defendant is subject to jurisdiction, as it negates the ability to plead that there is jurisdiction in the state where the action was brought. "An approach that forecloses alternative arguments appears to conflict with the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones")." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d at 1415.

If Defendants will not name a state where they concede they are subject to jurisdiction, then the Court may analyze whether exercising jurisdiction in the United States comports with due process. Here, it does.

Looking at the entire United States, it is clear that HardXXXTube.com does business with United States residents, targets its products at United States residents and has knowingly and intentionally infringed on the trademarks and copyrights of United States companies. Defendant offers premium payment for affiliates to send internet traffic from the United States. Advertising is targeted to United States residents. Its premium membership is offered in U.S. dollars. Payments are processed through United States payment processors and tracked using United States tracking services. Affiliated sales people from the United States send traffic to Defendant. Even if Defendants are only receiving referral fees from directing U.S. residents to paying sites, these are substantial contacts with the U.S. through its residents.

These facts clearly show that the factors the Eighth Circuit requires courts to examine to determine jurisdiction have been met:

(1) The nature and quality of the contacts with the forum state – clearly Defendants have ongoing contractual relationships with Iowa and United States residents through premium membership, Iowa members, and through targeted advertising on the website. Jurisdictional discovery would supplement this claim.

(2) The quantity of the contacts –thousands. An estimated sixteen percent of its visitors are U.S. residents. It is believed that a far higher percentage of fee paying members of the site are U.S. residents. Jurisdictional discovery would supplement this claim.

(3) The relationship of the cause of action to the contacts – The cause of action for trademark and copyright infringement is dependent on the fact that Defendants contacts with the U.S. are for the purpose of displaying Plaintiff's infringed films.

(4) The interest of the United States in providing a forum for its residents – the very existence of Rule 4(k)(2) shows that the U.S. wants to assure that a foreign defendant cannot engage in business in the U.S. yet escape suit here.

And (5) The convenience or inconvenience to the parties – again, since they do business in the U.S. with U.S. citizens and U.S. businesses, defendants can hardly claim inconvenience. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

The Court is to look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination. *Id.* Here, there is no question that these Defendants are doing business in an ongoing, systematic way, taking U.S. dollars from U.S. residents, utilizing United States payment processing and United States tracking systems while infringing on a U.S. company's trademarks and copyrights that are protected by U.S. law. In fact, Defendants themselves invoke the U.S. intellectual property laws to protect their website and the intellectual property they claim. For the Court to refuse to exercise jurisdiction would violate the purpose of Rule 4(k)(2).

The Court should exercise jurisdiction in this case unless Defendants designate another state it concedes has jurisdiction over them.

## III.    The Court Should Permit Jurisdictional Discovery by Plaintiff

Should the Court for some reason not exercise jurisdiction, it should permit jurisdictional discovery. The type of information that would demonstrate Defendants' contacts with Iowa (or the United States as a whole) – such as the number of times residents have accessed the websites,

32

the number of residents that have signed on for premium services, and any other data showing interaction between Defendant's website and Iowa or United States residents – are clearly not available to Plaintiff except through discovery. When this is the case, the Court should permit limited jurisdictional discovery.

In *Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc*., 426 F. Supp. 2d 976, 982 (S.D. Iowa 2006), the Court noted that Principal Financial Services could only obtain information about the quality or quantity of contacts that the website has facilitated in Iowa through discovery. The Court found that "discovery will facilitate [the court's] analysis of the five factors for determining whether personal jurisdiction is appropriate, as well as the applicability of the *Zippo* test." Thus the court permitted discovery regarding Defendants' website as well as other areas that were likely to aid the court to resolve the issue of personal jurisdiction question.

Similarly, in *Fishel v. BASF Group*, 175 F.R.D. 525, 528 (S.D. Iowa 1997), the court noted that where it is not readily determinable whether discovery would disclose additional facts supporting jurisdiction, "it may be an abuse of discretion to deny a plaintiff an opportunity for discovery to establish his jurisdictional allegations. See *Radaszewski v. Contrux, Inc*., 891 F.2d 672, 674–75 (8th Cir.1989) (Radaszewski I) (personal jurisdiction case; district court dismissal reversed with directions to allow discovery on jurisdictional allegations); *Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984) (a subject matter jurisdiction case)."

If the record does show that asserting jurisdiction would be reasonable and would not offend notions of fair play and substantial justice (that is, it would comport with due process), then Plaintiff should be permitted the limited jurisdictional discovery it seeks. *Lakin*, 348 F.3d at

33

712-714. Here, there is evidence that would show that Defendants do have sufficient contacts with Iowa, in addition to the fact it is infringing on an Iowa company's copyrights and trademarks and stealing its Iowa customers. The payment processing and tracking systems utilized by the website system are United States companies. The registrar of the domains is a United States company. The sample profiles of users show that Iowans unrelated to Plaintiff are joining Defendant websites. Further, as in *Principal Fin. Services, Inc. v. Big Fin. & Ins. Services, Inc.*, there is no publicly available evidence of the extent of Defendants' contacts specifically with Iowa (or, other than the statistics already provided, the United States) and how many Iowa residents are paying members of Defendants' website. This information is simply not available to Plaintiff without discovery.[3]

*Lakin* held that the interest of the state in providing a forum was an element of finding due process. 348 F.3d at 713. Here, Plaintiff is a legitimate Iowa corporation, active in the Northwood, Iowa community, whose trademarks are being infringed by Defendant. Thus, Iowa has a significant interest in providing a forum for redress of Plaintiff's rights. Further, Defendants have not provided a clue as to where in the United States it might be fair to sue them. Because nearly 17% of the website's business is from the U.S., it is fair to sue Defendants somewhere in the United States. Because there are residents in Iowa who interact and do business with Defendant's websites, and because Plaintiff, the corporation suffering the injury because of Defendant's websites, is located here, exercising personal jurisdiction in Iowa does comport with due process.

---

[3] The Court should consider this question: Where would Plaintiff obtain information about who is subscribing to HardXXXTube, or who has switched from Plaintiff's sites or dvd orders to HardXXXTube? This isn't information Plaintiff is likely to obtain in any other manner. This information can only be obtained through discovery.

34

The *Lakin* court also considered the burden on the defendant to travel here. *Lakin*, 348 F.3d at 713. Again, however, Defendants have substantial business in the United States because of their sale of premium memberships to U.S. residents or their receipt of referral fees for guiding U.S. residents to paying sites. Defendants websites are registered through a United States company, and premium membership fees are processed through United States payment processors and tracked using United States tracking solutions. Thus their assertion that they may not be sued here does not show "fair play and substantial justice." Because the Defendants have contacts with Iowa, the burden is not overly heavy on Defendants and due process permits them to be called to defend the claims here.

Because the evidence on the record thus far shows it would be reasonable and would not offend notions of fair play and substantial justice, the Court "must" allow jurisdictional discovery to permit Plaintiff to discover information regarding Defendants' contacts with Iowa residents if the Court determines that the current record does not establish personal jurisdiction over Defendants.

## CONCLUSION

Piracy of copyrighted works is not new to the entertainment field. Music, movies, videos and books have been copied and distributed without authorization or compensation to the rightful owner for as long as creative people have memorialized their ideas on paper. In the past, copies were easier to spot and distribution of unauthorized works more difficult. With the advent of the Internet reaching around the globe and the ability to replicate digital files infinitum, the ease of pirating copyrighted material has contributed to the explosion of unauthorized distribution. The global reach of the Internet allows website operators to hide behind borders, fictional names or outdated addresses, thwarting attempts to seek compensation for the unauthorized use of copyrighted content. Traditional geographic borders have no meaning on the Internet, further

35

compounding the difficulty facing legitimate copyright owners attempting to enforce their rights against unauthorized users. Legitimate copyright owners face a steep hill to enforce their rights when their works can be replicated at lightning speed by far away entities, only to be sold back to the legitimate owner's customers in its home market and the pirates claim immunity from prosecution.

Plaintiff, a legitimate Iowa company with full ownership of United States copyrights and trademarks, purchased a membership through a page at HardSexTube.com containing a video that infringed upon Plaintiff's copyright. Plaintiff documented numerous infringements from its Northwood, Iowa office. The HardXXXTube.com website contains advertising directly targeted at Iowa residents and interacts directly with Iowa residents, competing with Plaintiff for customers using Plaintiff's own property. Ownership of the HardSexTube.com website is outside the United States, and Defendants claim insufficient contacts to be haled into court.

Boiled down to its essence, Defendants' argument is that claims for infringement of U.S. trademarks and copyrights, rightfully owned by a duly registered Iowa Limited Liability Company with a real office in Northwood, Iowa, and infringed upon to produce income from Internet users and advertisers in the U.S., may not be litigated in the United States. This argument is baseless and antithetical to justice. Defendants, by their actions targeting Iowa internet users and United States advertisers, infringing the copyrights and trademarks of an Iowa company, are properly and fairly under the jurisdiction of this Court. The due process requirements for Defendants to be haled into this court have been met.

DATED: April 29, 2012    Respectfully submitted,

          By:

            /s/ Chad L. Belville
            Chad Belville, Attorney at Law

Attorney for Plaintiff
Iowa Bar # 015731

Physical Address                          4742 North 24th Street Suite 315
                                          Phoenix, AZ 85016

MAILING ADDRESS:                          P.O. Box 17879
                                          Phoenix, AZ 85011

                                          Telephone:  602-904-5485
                                          FAX:  602-297-6953
                                          E-mail cbelville@azbar.org
                                          ATTORNEY FOR PLAINTIFF


Certificate of Service


I, Chad Belville, Attorney for Plaintiff, hereby certify that on April 29, 2011 a copy of this
Resistance to Defendant's Motion to Dismiss was served upon the Attorneys for Defendants,
listed as Connie M. Alt, Jennifer Rinden, Valentin Gurvits, and Evan Fray-Witzer, through the
Court's Electronic Case Filing System.


/s/ Chad L. Belville

EXHIBIT LIST

A.  Google HardSex Community Search Results

B.  Iowa Based User Profiles Sample

C.  Webmaster Pages

D.  WhoIs HardXXXTube.com

E.  Join Sequence

F.  Adult Friend Finder dba GetItOn FAQ

G.  HardSexTube.GetItOn.com Terms and Conditions

H.  Targeted Advertising to Iowa

I.  Declaration of Jason Tucker